# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LEWYN BOLER, aka LEON BOLER, individually and dba PRODUCTION CAR CARE PRODUCTS,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>3D INTERNATIONAL, LLC, a California Limited Liability Company,<br><br>　　　　　Defendant. | No. 2:14-cv-00658-TLN-CKD<br><br>**ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |

This matter is before the Court pursuant to Defendant 3D International, LLC's ("Defendant") Motion for Summary Judgment. (ECF No. 38.) Plaintiff Lewyn Boler, aka Leon Boler, individually and dba Production Car Care Products ("Plaintiff") filed an opposition, (ECF No. 39), and Defendant filed a reply, (ECF No. 40). For the reasons set forth below, the Court DENIES Defendant's Motion for Summary Judgment. (ECF No. 38.)

///
///
///
///

1

## I. FACTUAL AND PROCEDURAL BACKGROUND

On March 11, 2014, Plaintiff filed a complaint against Defendant for various causes of action resulting out of the alleged infringement of Plaintiff's trademark. (ECF No. 1.) Specifically, Plaintiff alleges the following causes of action: (1) Trademark Infringement under 15 U.S.C. §§ 1114 & 1125(a); (2) Common Law Trademark Infringement; (3) Violations of Federal Unfair Competition and False Advertising under 15 U.S.C. § 1125(a); and (4) Violations of Unfair Competition and False Advertising under California Business and Professions Code §§ 17200 & 17500. (ECF No. 1.)

Plaintiff, the owner of Production Car Care Products, manufactures and distributes specialized products for automobile detailing and has acquired a worldwide reputation for quality products. (ECF No. 38-3 at 4.) For the past 35 years, one of Plaintiff's featured products has been a heavy-duty cleaner and degreaser called "SLAM!" (ECF No. 38-3 at 4.) This product is known to be made by Plaintiff, and it produces substantial income for Plaintiff based upon its sales and the enhanced goodwill it creates for Plaintiff's business and products. (ECF No. 38-3 at 4–5.) Plaintiff alleges that in an effort to trade on the great popularity of SLAM! and the great reputation of Plaintiff, Defendant began manufacturing and distributing a product called "GRAND SLAM," a heavy-duty degreaser sold in the same markets as SLAM! (ECF No. 1 ¶ 11.)

Plaintiff alleges he filed for trademark protection with the United States Patent and Trademark Office ("USPTO") on August 12, 2013. (ECF No. 1 ¶ 12.) On December 9, 2013, Plaintiff sent Defendant a cease and desist letter and notified Defendant of its infringement of Plaintiff's trademark under common law trademark law. (ECF No. 39-2 at 4–5.) On January 21, 2014, Plaintiff received a registered trademark for SLAM! (ECF No. 38-1 at 8.) However, Plaintiff alleges that since December 9, 2013, Defendant has continued to violate Plaintiff's trademark protection and has expanded into new areas protected by Plaintiff's trademark. (ECF No. 1 ¶ 14.) According to Plaintiff, Defendant's actions are costing Plaintiff "large amounts of money and are slowly destroying the business that he spent 35 years building." (ECF No. 1 ¶ 15.)

On September 23, 2015, Plaintiff filed a motion for partial summary judgment on the

issue of "likelihood of confusion" of Plaintiff's and Defendant's trademarks. (ECF No. 19.) On October 23, 2015, Defendant filed a cross-motion for summary judgment on the same issue. (ECF No. 21.) On September 29, 2016, the Court denied both parties' motions for summary judgment, in part because both parties failed to file a statement of undisputed facts, which is required under Local Rule 260(a). (ECF No. 29 at 5–6.) Defendant now moves for summary judgment again, arguing that there are no genuine issues of material fact as to whether the marks SLAM! and GRAND SLAM are confusingly similar. (ECF No. 38 at 4.)

## II. STANDARD OF LAW

Summary judgment is appropriate when the moving party demonstrates no genuine issue of any material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis of its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file together with affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the pleadings, depositions, answers to interrogatories, and admissions on file." *Id.* at 324 (internal quotation marks omitted). Indeed, summary judgment should be entered against a party who does not make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Id.* at 322.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact does exist. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87 (1986); *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288–89 (1968). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits or other admissible discovery material, in support of its contention that the dispute exists. Fed. R. Civ. P. 56(c). The opposing party must

demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, *id.* at 251–52.

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *First Nat'l Bank*, 391 U.S. at 288–89. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" *Matsushita*, 475 U.S. at 587 (quoting Rule 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with any applicable affidavits. Fed. R. Civ. P. 56(c); *SEC v. Seaboard Corp.*, 677 F.2d 1301, 1305–06 (9th Cir. 1982). The evidence of the opposing party is to be believed, and all reasonable inferences that may be drawn from the facts pleaded before the court must be drawn in favor of the opposing party. *Anderson*, 477 U.S. at 255. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. *Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244–45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898 (9th Cir. 1987). Finally, to demonstrate a genuine issue that necessitates a jury trial, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Id.* at 587.

**III.    ANALYSIS**

To state a valid cause of action for trademark infringement under the Lanham Act, a plaintiff "must prove: (1) that it has a protectable ownership interest in the mark; and (2) that the defendant's use of the mark is likely to cause consumer confusion." *Rearden LLC v. Rearden Commerce, Inc.*, 683 F.3d 1190, 1202 (9th Cir. 2012) (quoting *Network Automation, Inc. v.*

*Advanced Sys. Concepts, Inc.*, 638 F.3d 1137, 1144 (9th Cir. 2011)). Defendant moves for summary judgment, arguing that Plaintiff is unable to establish a likelihood of consumer confusion. (ECF No. 38 at 4.) Plaintiff, conversely, argues there is a genuine dispute of material fact as to whether there is a likelihood of consumer confusion. (ECF No. 39 at 4–6.) The likelihood of consumer confusion is central to both Plaintiff's trademark and unfair competition claims. *See JL Bev. Co., LLC v. Jim Beam Brands Co.*, 828 F.3d 1098, 1104 (9th Cir. 2016) ("The success of each of JL Beverage's claims turns on the same issue: whether there was a genuine dispute of material fact as to the likelihood of consumer confusion.").

"The 'likelihood of confusion' inquiry generally considers whether a reasonably prudent consumer in the marketplace is likely to be confused as to the origin or source of the goods or services bearing one of the marks or names at issue in the case." *Rearden*, 683 F.3d at 1209. "Eight factors, sometimes referred to as the *Sleekcraft* factors, guide the inquiry into whether a defendant's use of a mark is likely to confuse consumers . . . ." *Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt.*, 618 F.3d 1025, 1030 (9th Cir. 2010) (citing *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348–49 (9th Cir. 1979)).

> These eight factors are: (1) strength of the mark; (2) proximity of the goods; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) type of goods and the degree of care likely to be exercised by the purchaser; (7) defendant's intent in selecting the mark; and (8) likelihood of expansion of the product lines.

*Rearden*, 683 F.3d at 1209 (citing *Sleekcraft*, 599 F.2d at 348–49).

"The factors are non-exhaustive and applied flexibly; the *Sleekcraft* factors are not intended to be a 'rote checklist.'" *JL Bev. Co.*, 828 F.3d at 1106 (quoting *Rearden*, 683 F.3d at 1209). "Not all factors are created equal, and their relative weight varies based on the context of a particular case." *Stone Creek, Inc. v. Omnia Italian Design, Inc.*, 875 F.3d 426, 431 (9th Cir. 2017). "Although some factors—such as the similarity of the marks and whether the two companies are direct competitors—will always be important, it is often possible to reach a conclusion with respect to likelihood of confusion after considering only a subset of the factors." *Brookfield Commc'ns, Inc. v. W. Coast Entm't Corp.*, 174 F.3d 1036, 1054 (9th Cir. 1999) (citing

*Dreamwerks Prod. Grp. v. SKG Studio*, 142 F.3d 1127, 1130–32 (9th Cir. 1998)); *see also Stone Creek*, 875 F.3d at 432 ("Two particularly probative factors are the similarity of the marks and the proximity of the goods."). "A determination may rest on only those factors that are most pertinent to the particular case before the court, and other variables besides the enumerated factors should also be taken into account based on the particular circumstances." *Rearden*, 683 F.3d at 1209. "Given the open-ended nature of this multi-prong inquiry, it is not surprising that summary judgment on 'likelihood of confusion' grounds is generally disfavored." *Id*. at 1210. "However, in cases where the evidence is clear," the Ninth Circuit has "not hesitated to affirm summary judgment on this point." *Au-Tomotive Gold, Inc. v. Volkswagen of Am., Inc.*, 457 F.3d 1062, 1075 (9th Cir. 2006). The Court will address each *Sleekcraft* factor in turn.

### A. Strength of the Mark

"The strength of the mark is a key factor with two components: the mark's recognition in the market (*i.e.*, its commercial strength) and the mark's inherent distinctiveness (*i.e.*, its conceptual strength)." *Stone Creek*, 875 F.3d at 432. "A mark's conceptual strength 'depends largely on the obviousness of its connection to the good or service to which it refers.'" *JL Bev. Co.*, 828 F.3d at 1107 (quoting *Fortune Dynamic*, 618 F.3d at 1032–33). "To determine a mark's conceptual strength, we classify a mark along a spectrum of five categories ranging from [most to least distinctive]: arbitrary, fanciful, suggestive, descriptive, and generic." *Id.* "The more distinctive a mark, the greater its conceptual strength; in other words, a mark's conceptual strength is proportional to the mark's distinctiveness." *M2 Software, Inc. v. Madacy Entm't*, 421 F.3d 1073, 1080 (9th Cir. 2005). "Arbitrary and fanciful marks, which employ words and phrases with no commonly understood connection to the product, are the two strongest categories, and 'trigger the highest degree of trademark protection.'" *JL Bev. Co.*, 828 F.3d at 1107 (quoting *Surfvivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 631 (9th Cir. 2005)). Fanciful marks are distinguished from arbitrary marks in that they consist of "coined phrases" such as "Kodak" cameras or "Aveda" skin care products. *Surfvivor Media*, 406 F.3d at 632. Suggestive marks, which fall in the middle of the spectrum, "suggest a product's features and require consumers to exercise some imagination to associate the suggestive mark with the product." *JL Bev. Co.*,

1   828 F.3d at 1107. Finally, descriptive and generic marks are the two weakest categories. *Id.*
2   "Descriptive marks define a particular characteristic of the product in a way that does not require
3   any imagination, while generic marks describe the product in its entirety and are not entitled to
4   trademark protection." *Id.*

5   Commercial strength, on the other hand, is based on actual marketplace recognition.
6   *Network Automation*, 638 F.3d at 1149. "Commercial strength may be demonstrated by
7   commercial success, extensive advertising, length of exclusive use, and public recognition."
8   *Adidas Am., Inc. v. Calmese*, 662 F. Supp. 2d 1294, 1303 (D. Or. 2009) (citing *M2 Software*,
9   421 F.3d at 1081). Further, "a suggestive or descriptive mark, which is conceptually weak, can
10  have its overall strength as a mark bolstered by its commercial success." *M2 Software*, 421 F.3d
11  at 1081. Neither party addresses the commercial strength of Plaintiff's mark. Thus, the Court is
12  unable to evaluate this component.

13  Defendant argues that Plaintiff's mark is "at least 'suggestive'" and "perhaps
14  'descriptive'" because the word "slam" is used by many other cleaners. (ECF No. 38 at 6.)
15  Specifically, Defendant provided evidence of fourteen cleaners it found on an Internet search that
16  are branded with the word "slam." (ECF No. 38 at 5–6.) Defendant also conducted a search of
17  USPTO records and provided evidence of six cleaning products that contain the word "slam," two
18  of which are Plaintiff's products. (ECF No. 38 at 5.) Plaintiff, conversely, argues that the word
19  "slam" is not commonly used for automotive cleaning products. (ECF No. 39 at 3–4.) Plaintiff
20  argues that in his Internet search, he "found only one automotive product [that] uses the word
21  SLAM and that product is sold only in the UK." (ECF No. 39-1 at 2.) In response, Defendant
22  asserts that "[a]ll purpose cleaning preparations" is the relevant field because Plaintiff's
23  trademark registration states that the goods sold under the SLAM! trademark are "[a]ll purpose
24  cleaning preparations." (ECF No. 40 at 4–5.) However, Defendant also presents conflicting
25  evidence regarding whether SLAM! is an all-purpose cleaning preparation, stating in its
26  undisputed statement of facts that Plaintiff sells "specialized products for automobile detailing,"
27  including its product SLAM!, a "Heavy Duty Cleaner & Degreaser." (ECF No. 38-3 at 4.)
28  It is clear the parties dispute how broadly the relevant market should be characterized in

evaluating whether the field is crowded with the word "slam." *See JL Bev. Co.*, 828 F.3d at 1108. "In other words, there are genuine disputes of material fact as to what constitutes the relevant 'field,' whether the field is 'crowded,' and the effect of the foregoing on the likelihood of confusion analysis." *Id.* However, the impact of a crowded field "is not dispositive in determining a mark's conceptual strength; rather, it is but one factor a court considers in evaluating the overall strength of the mark." *Id.* Yet, despite the impact of a crowded field being only one factor a court considers in evaluating the strength of a mark, this is the exclusive focus of Defendant's argument. Notably, Defendant completely fails to explain how the word "slam" is connected to the category of automotive degreasers or, even more broadly, the category of all-purpose cleaners.

Viewing all the evidence in the light most favorable to Plaintiff, the Court is unpersuaded that SLAM! is either suggestive or descriptive. Suggestive marks "require consumers to exercise some imagination to associate the suggestive mark with the product," while "[d]escriptive marks define a particular characteristic of the product in a way that does not require any imagination." *Id.* at 1107. Examples of suggestive marks include "Slickcraft" boats or "Air Care," for a service that maintains medical equipment for administering oxygen. *Surfvivor Media*, 406 F.3d at 632. An example of a descriptive mark, on the other hand, is "Honey Roasted" for nuts roasted with honey. *Id.* While Defendant has provided some evidence that the word "slam" has been used in various cleaning product names, the Court is unable to see a commonly understood connection between the mark SLAM! and Plaintiff's product. SLAM! does not define a particular characteristic of Plaintiff's product in a way that does not require imagination, nor has Defendant made any argument explaining how SLAM! defines a particular characteristic of Plaintiff's product in a way that does require imagination. Thus, because Defendant has not demonstrated SLAM! has any connection to Plaintiff's product, it is either fanciful or arbitrary, entitling it to the highest degree of trademark protection. However, because there are genuine disputes of material fact regarding whether the field is crowded, and the effect of this on the likelihood of confusion analysis, this factor cannot be conclusively resolved on summary judgment.

///

B. <u>Proximity of the Goods</u>

"Related goods are generally more likely than unrelated goods to confuse the public as to the producers of the goods." *Brookfield Commc'ns*, 174 F.3d at 1055. "For related goods, the danger presented is that the public will mistakenly assume there is an association between the producers of the related goods, though no such association exists." *Sleekcraft*, 599 F.2d at 350.

Defendant argues that while Plaintiff's product "would perform the same cleaning function as [Defendant's] car care product" if applied to car cleaning, Plaintiff has registered his mark with the USPTO as "[a]ll purpose cleaning preparations," and therefore Plaintiff's and Defendant's products are unrelated. (ECF No. 38 at 7.) Plaintiff responds that Plaintiff's and Defendant's products are "absolutely identical in every respect concerning the issues in this case" and "have identical chemical makeups and identical uses." (ECF No. 39 at 2.) In making this argument, Plaintiff provides his own declaration, which states that Defendant's product has "the identical chemical base" (sodium hydroxide) as Plaintiff's product, and has "identical uses, identical markets[,] and an identical customer base." (ECF No. 39-2 ¶ 7.) Given Defendant's statement in its undisputed statement of facts that Plaintiff sells products for automobile detailing, Defendant's assertion that Plaintiff's product would perform the same cleaning function as Defendant's car care product if applied to car cleaning, and Plaintiff's evidence contending the products are identical, a jury could more than reasonably find that Plaintiff's and Defendant's products are related. To the extent Defendant argues the products are not related because Plaintiff's product is an all-purpose cleaner rather than an automotive degreaser, this is a factual dispute that cannot be resolved on summary judgment.

C. <u>Similarity of the Marks</u>

The similarity of the marks "has always been considered a critical question in the likelihood-of-confusion analysis." *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1205 (9th Cir. 2000). "Similarity of the marks is tested on three levels: sight, sound, and meaning." *Sleekcraft*, 599 F.2d at 351. The Ninth Circuit has "developed three axioms that apply to the 'similarity' analysis: 1) Marks should be considered in their entirety and as they appear in the marketplace; 2) Similarity is best adjudged by appearance, sound, and meaning; and, 3)

Similarities weigh more heavily than differences." *Entrepreneur Media v. Smith*, 279 F.3d 1135, 1144 (9th Cir. 2002). The only evidence before the Court relating to this factor is that Plaintiff has a mark SLAM! and Defendant has a mark GRAND SLAM. However, "[m]arks are not 'similar' for purposes of assessing likelihood of confusion simply because they contain an identical or nearly identical word." *Mattel, Inc. v. MCA Records, Inc.*, 28 F. Supp. 2d 1120, 1147 (C.D. Cal. 1998) (quoting *Mejia & Assocs. v. IBM Corp.*, 920 F. Supp. 540, 547 (S.D.N.Y. 1996)). Rather, in determining whether marks are similar, courts may look to lettering styles and capitalization, colors, locations of the mark on the product, prominence, sound, and meaning. *Pom Wonderful LLC v. Hubbard*, 775 F.3d 1118, 1128–29 (9th Cir. 2014).

For example, when evaluating the degree of similarity between the marks "Entrepreneur" and "Entrepreneur Illustrated," the Ninth Circuit looked to the appearance of the marks on the parties' publication covers, including the colors, sizes, and font styles of the titles. *Entrepreneur Media*, 279 F.3d at 1144. There, the Court held that a reasonable juror would have to find the marks similar in the context of the parties' publication covers because the word "ENTREPRENEUR" was the most prominent visual feature on both covers. *Id.* at 1144–45. However, the Court also held that when the marks appeared in textual sentences on the parties' websites, presumably in black, plain font, a reasonable juror could find the marks dissimilar because "'Entrepreneur Illustrated' contains an entire four-syllable word that 'Entrepreneur' does not [and] this difference between the marks is a noticeable one . . . to the eye and the ear.'" *Id.* at 1145 (footnote omitted). In making this holding, the Ninth Circuit noted that "Entrepreneur" is "a common, descriptive word in the English language," and the similarity of a stronger mark "would make that similarity weigh more heavily in the analysis of this factor." *Id.* at 1145 n.9. The Court reiterated this reasoning in *Perfumebay.com Inc. v. eBay Inc.*, 506 F.3d 1165, 1174 (9th Cir. 2007), holding that although differences existed between the marks Perfumebay and eBay, "the fact that eBay's mark is a strong one weigh[ed] against Perfumebay" in a similarity analysis.

The Court concludes that a reasonable juror could find the marks in this case are similar if they were both printed in textual sentences in black, Times New Roman, size twelve font. While it is clear that the marks SLAM! and GRAND SLAM have the noticeable difference of the word

"GRAND," the fact that SLAM! is a conceptually strong mark weighs in favor of a finding of similarity. Further, on top of the marks' obvious aural similarities, a juror could find the marks have similar meanings, as "grand" is defined as "having more importance than others" or "having higher rank than others bearing the same general designation." *Grand*, *Merriam-Webster Online Dictionary*, https://www.merriam-webster.com (last visited Oct. 9, 2018). Thus, GRAND SLAM could simply be describing that it is the "better" slam. On the other hand, it is possible the marks have entirely different meanings, as the term "grand slam" commonly refers to a baseball miracle—a home run hit with the bases loaded—while the word slam has no such connotations.

Despite the similarities between SLAM! and GRAND SLAM, a reasonable juror could find the marks are dissimilar if they appeared on differently shaped containers, with noticeable differences in lettering styles and capitalization,[1] colors, locations, or prominence. However, since neither party provided the Court the context in which the marks appear in the marketplace, it is unable to evaluate the marks outside of the words that comprise them. Therefore, because material issues of fact remain regarding the similarity of the marks, this factor cannot be resolved on summary judgment.

### D. Evidence of Actual Confusion

"[E]vidence of actual confusion, at least on the part of an *appreciable portion* of the actual consuming public, constitutes strong support for a 'likelihood of confusion' finding." *Rearden*, 683 F.3d at 1210 (emphasis added). Moreover, "[e]vidence that use of the two marks has already led to confusion is persuasive proof that future confusion is likely." *Sleekcraft*, 599 F.2d at 352. Nevertheless, "[b]ecause of the difficulty in garnering such evidence, the failure to prove instances of actual confusion is not dispositive. Consequently, this factor is weighed heavily only when there is evidence of past confusion . . . ." *Id.* at 353 (citation omitted).

Defendant argues that Plaintiff "has provided no credible evidence of actual confusion." (ECF No. 39-1 at 2.) Plaintiff, however, maintains that there is actual confusion because he received a single purchase order for "Grand Slam Cleaner." (ECF No. 39-2 ¶ 13; ECF No. 38-1

---

[1] The Court notes that both marks appear fully capitalized in the parties' briefs, but it is not clear to the Court whether both marks are fully capitalized in the marketplace.

at 59.) This evidence is trivial and does not support a finding that any appreciable number of consumers is confused by the two marks. *See Surfvivor Media*, 406 F.3d at 633 (holding the evidence of actual confusion was "scant" when plaintiff provided evidence of only a single retailer and a single customer mistaking a product). However, while the Court finds this evidence is inconsequential, the absence of proof on this factor is normally given relatively little weight. Further, neither party has provided additional evidence, such as survey evidence, demonstrating either actual confusion or an absence of actual confusion. Accordingly, this factor weighs slightly in favor of Defendant.

### E. Marketing Channels Used

"Convergent marketing channels increase the likelihood of confusion." N*utri/Sys., Inc. v. Con-Stan Indus., Inc.*, 809 F.2d 601, 606 (9th Cir. 1987). Defendant argues that Plaintiff has provided no evidence of the channels of trade for his product. (ECF No. 38 at 11.) In response, Plaintiff argues that SLAM! and GRAND SLAM are sold in identical markets, but provides no evidence other than his own declaration in which he makes the conclusory statement that Plaintiff's and Defendant's products have "identical markets." (ECF No. 39-2 ¶ 7.) Further, Plaintiff states in his declaration that both Plaintiff's and Defendant's products are primarily advertised on the Internet. (ECF No. 39-2 ¶ 10–11.) Notably, neither Plaintiff nor Defendant specifically address where their goods are sold, nor do they discuss advertising methods utilized other than the Internet.

As explained by the Ninth Circuit, "it would be the rare commercial retailer that did not advertise online, and the shared use of a ubiquitous marketing channel does not shed much light on the likelihood of consumer confusion." *Network Automation*, 638 F.3d at 1151; *see also Playboy Enters., Inc. v. Netscape Commc'ns Corp.*, 354 F.3d 1020, 1028 (9th Cir. 2004) ("Given the broad use of the Internet today, the same could be said for countless companies. Thus, this factor merits little weight."). Accordingly, because neither party has produced evidence of where their products are sold, nor have they produced evidence of advertising channels other than the Internet, this factor is neutral.

///

F. Type of Goods and the Degree of Care Likely to Be Exercised by the Purchaser

"In analyzing the degree of care that a consumer might exercise in purchasing the parties' goods, the question is whether a 'reasonably prudent consumer' would take the time to distinguish between the two product lines." *Surfvivor Media*, 406 F.3d at 634. Courts look both to the "relative sophistication of the relevant consumer," *Fortune Dynamic*, 618 F.3d at 1038, and the cost of the item, *Brookfield Commc'ns*, 174 F.3d at 1060, in determining the degree of care likely to be exercised by the purchaser. The "reasonably prudent consumer" is expected "to be more discerning—and less easily confused—when he is purchasing expensive items." *Id.* "On the other hand, when dealing with inexpensive products, customers are likely to exercise less care, thus making confusion more likely." *Id.*

Defendant argues that those who purchase its products "maintain their automobiles . . . and the automobiles of others," and are therefore "not impulse purchasers, but rather companies or individuals which or who give great consideration to the automotive products they purchase." (ECF No. 38 at 14.) However, Defendant provides no evidence in support of this proposition. In response, Plaintiff contends that Plaintiff's and Defendant's products are identical, inexpensive automotive degreasers that are sold to consumers who do not research the products as they would a more expensive product. (ECF No. 39-1 at 3.) In support of this proposition, Plaintiff provides the declaration of Shane Campbell, a retail distributor for Plaintiff. However, Mr. Campbell provides no facts regarding the cost of SLAM! or its consumer base. (*See* ECF No. 39-5.) Since neither party provides evidence directly relating to the cost of their products, nor the degree of sophistication of their purchasers, the Court is unable to determine whether the typical buyer of Plaintiff's and Defendant's products is likely to exercise a low or high degree of care in purchasing their products. Accordingly, this factor is neutral.

G. Defendant's Intent in Selecting the Mark

"When an alleged infringer knowingly adopts a mark similar to another's, courts will presume an intent to deceive the public." *Official Airline Guides, Inc. v. Goss*, 6 F.3d 1385, 1394 (9th Cir. 1993). Defendant argues that it selected the mark GRAND SLAM for its happy

connotations, such as hitting a home run in baseball with the bases loaded. (ECF No. 38 at 14.) Defendant also argues that it was not aware of Plaintiff's products when it adopted its mark. (ECF No. 38 at 14.) Again, however, Defendant provides no evidence supporting these assertions.[2] Plaintiff, conversely, argues that "slam" is a word unrelated to any aspect of automotive cleaning, and it was not a coincidence that Defendant included this word in its mark. (ECF No. 39-1 at 3.) Plaintiff also provides no evidence supporting these assertions.[3] Both parties agree that Plaintiff used his SLAM! mark before Defendant used its GRAND SLAM mark. (ECF No. 39-1 at 3.) However, other than the fact that Plaintiff used his mark first, neither party has provided evidence regarding whether Defendant had knowledge of Plaintiff's mark when choosing its own mark. Because neither party has produced evidence regarding whether Defendant knowingly adopted a mark similar to Plaintiff's mark, the Court is unable to evaluate this factor. Accordingly, this factor is neutral.

### H. Likelihood of Expansion of the Product Lines

"[A] 'strong possibility' that either party may expand his business to compete with the other will weigh in favor of finding that the present use is infringing." *Sleekcraft*, 599 F.2d at 354. However, "[t]he likelihood of expansion in product lines factor is relatively unimportant where two companies already compete to a significant extent." *Brookfield Commc'ns*, 174 F.3d at 1060.

Defendant argues that Plaintiff has provided no evidence of expansion of his product lines. (ECF No. 38 at 15.) In response, Plaintiff maintains he intends to expand the use of the term SLAM! to his other automotive products and to sell his products in Asia, Europe, Australia, and South America when the time is right. (ECF No. 39-2 ¶ 12.) Although Plaintiff has expressed a vague interest in expanding his product lines at some time in the future, "mere speculation is not evidence." *See Surfvivor Media*, 406 F.3d at 634 (holding that although the

---

[2] Defendant cites to Tunch Goren's declaration for the propositions that Defendant selected its mark because of its happy baseball connotations and that it was not aware of Plaintiff's product when Defendant adopted its mark. However, the Court is unable to find any such statements in Mr. Goren's declaration. (*See* ECF No. 38-2.)

[3] Plaintiff cites to his own declaration for the propositions that "slam" is a word unrelated to any aspect of automotive cleaning and that it was not a coincidence that Defendant included this word in its mark. However, the Court is unable to find any such statements in Plaintiff's declaration. (*See* ECF No. 39-2.)

14

plaintiff "expressed interest in expanding his product," his "complete inability to adduce any concrete evidence of expansion plans tilt[ed] this factor in favor of" the defendant). Plaintiff has owned and operated Production Car Care Products since 1979, yet has provided no evidence of his expansion to date nor any concrete evidence of plans for future expansion. Therefore, this factor weighs in favor of Defendant.

> I. Evaluating the Factors

Evaluating all the factors and the limited evidence provided by both parties, the Court cannot say as a matter of law there is no likelihood of consumer confusion. Although the factors of likelihood of expansion of the product lines and evidence of actual confusion favor Defendant, these factors are not particularly probative in determining the likelihood of consumer confusion. As to the remaining factors, there are either genuine issues of material fact or the parties provided no evidence on which to make a determination. Therefore, because "a majority of the *Sleekcraft* factors could tip in either direction," *Fortune Dynamic*, 618 F.3d at 1039, the question of likelihood of consumer confusion "should be answered as a matter of fact by a jury, not as a matter of law by a court," *id.* at 1031. Accordingly, the Court denies Defendant's motion for summary judgment.

**IV. CONCLUSION**

For the foregoing reasons, the Court hereby DENIES Defendant's Motion for Summary Judgment. (ECF No. 38.)

IT IS SO ORDERED.

Dated: October 16, 2018

_____
Troy L. Nunley
United States District Judge